UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS WENDELBURG,

    Plaintiff,

  v.                                                Case No. 24-CV-52-SCD

WISCONSIN LABORERS HEALTH FUND,

    Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

The Wisconsin Laborers Health Fund is a multiemployer welfare benefit plan that provides comprehensive health and welfare benefits to its eligible participants. *See* Miller Decl. Ex. 4, at i, ECF No. 14. A participant is eligible for benefits under the Fund if he works under a collective bargaining agreement that requires his employer to contribute to the plan on his behalf, his employer makes those contributions, and he meets the plan's initial eligibility requirements. *Id.* at 10. To maintain eligibility, the Fund must receive from the employer at least 345 hours of contributions every three months. *Id.* at 10–11. If the participant does not meet this requirement, the Fund will look back to see if it received enough contributions in previous contribution quarters to make up the difference. *Id.* at 11. In other words, contributions in excess of the 345-hour minimum eligibility requirement can help a participant maintain eligibility in the event of a lean month or two.

Thomas Wendelburg is a participant of the Fund. *See* Notice of Removal ¶ 3, ECF No. 1. His employer, Sid's Sealants, LLC, made contributions to the Fund on his behalf pursuant to several collective bargaining agreements with the local unions representing the company's

employees. *See* Miller Decl. Ex. 1, ECF No. 11; Miller Decl. Ex. 2, ECF No. 12; Miller Decl. Ex. 3, ECF No. 13. Those agreements generally required Sid's Sealants to make contributions for health and welfare benefits for each hour that its employees worked. *See* Ex. 1, at 20–22, 60; Ex. 2, at 20–22, 62; Ex. 3, at 10–11, 37–42. In December 2023, Wendelburg sued the Fund in state court seeking a refund of contributions his employer made from August 2021 through April 2023,[1] which exceeded the minimum number of hours needed to maintain his eligibility for benefits. *See* Compl., ECF No. 1-1. Wendelburg says the alleged overpayment totaled $9,676.99 ($4,337.55 in 2022 + $4,967.25 in 2021 + 4% interest). *Id.* at 2, 8–12.

The Fund removed the matter to federal court in January 2024. It was reassigned to this court after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 6, 7. After filing an answer to the complaint, ECF No. 5, the Fund moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, *see* Def.'s Mot., ECF No. 8; Def.'s Mem., ECF No. 9. Wendelburg, who is proceeding without an attorney, filed a response to the motion, Pl.'s Resp., ECF No. 15, and the Fund submitted a reply, Def.'s Reply, ECF No. 16.

"Rule 12(c) permits a party to move for judgment after the complaint and answer have been filed by the parties." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing Fed. R. Civ. P. 12(c)). "To survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its face.'" *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (quoting *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018)). "When assessing the facial plausibility of a claim, '[the court must] view

---

[1] Page two of the complaint says August 2021 through April **2022**. However, the attachments to the complaint clearly show that Wendelburg is challenging the contributions made from August 2021 through April **2023**.

2

the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Id.* (quoting *Buchanan-Moore*, 570 F.3d at 827).

Before addressing the merits of the Fund's motion, I pause briefly to ensure that subject matter jurisdiction is secure. "Removal of a state civil suit to federal court is proper where 'the district courts of the United States have original jurisdiction.'" *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002) (quoting 28 U.S.C. § 1441(a)). The Fund does not allege diversity of citizenship between the parties. Rather, it contends that removal was proper—and therefore subject matter jurisdiction exists—because Wendelburg's complaint presents a federal question. Ordinarily, "federal question jurisdiction exists only 'when the plaintiff's well-pleaded complaint raises issues of federal law.'" *Hart v. Wal-Mart Stores, Inc.*, 360 F.3d 674, 678 (7th Cir. 2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). "But there is an exception '[w]hen a federal statute wholly displaces the state-law cause of action through complete preemption.'" *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 723 (7th Cir. 2017) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)).

The complaint here simply alleges that, from August 2021 through April 2023, Wendelburg's employer paid monies to the Fund above and beyond what was needed for eligibility per his union contract. He does not identify any legal theories of recovery. Nevertheless, Wendelburg (a participant in the plan) essentially seeks to recover paid contributions from a welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1101–1461. He therefore appears to bring his claim under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B) (permitting a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms

3

of the plan, or to clarify his rights to future benefits under the terms of the plan"). To the extent Wendelburg intended to pursue a state-law claim for recovery, ERISA completely preempts that claim because Wendelburg could have brought it under that Act, and there is no other independent legal duty implicated by the Fund's actions. *See Studer*, 867 F.3d at 723–27 (applying the two-step test for complete preemption established by the Supreme Court in *Davila*); *see also Martin v. Hamil*, 608 F.2d 725, 729–30 (7th Cir. 1979) (finding that ERISA preempts any state law that permits the refund of contributions paid to an ERISA benefit plan). Satisfied that the action was properly removed, I turn to the Fund's arguments for judgment on the pleadings.[2]

The Fund argues that Wendelburg cannot qualify for a refund both because he is not an employer and because his employer complied with its union contracts by remitting contributions to the Fund for each hour he worked. Wendelburg insists that his employer should have contributed to the Fund only the 345 hours needed to maintain his eligibility for health and welfare benefits. He contends that any contributions beyond that minimum threshold are rightfully his per the terms of the union contracts and collective bargaining agreements.

It appears beyond doubt that Wendelburg cannot prove any facts that would support a claim to relief for contributions his employer made to the Fund on his behalf for health and welfare benefits. Wendelburg says that he is entitled to recover the value of the alleged overpayments according to the agreements his employer entered into with the Fund, but the

---

[2] I also conclude that the plaintiff has Article III standing. Although I conclude herein that he is not entitled to relief, his complaint alleges that the defendant's actions caused him concrete injury and that he is due a refund. *Kohen v. Pac. Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir. 2009) ("Jurisdiction established at the pleading stage by a claim of injury that is not successfully challenged at that stage is not lost when at trial the plaintiff fails to substantiate the allegation of injury; instead the suit is dismissed on the merits.")

CBAs at issue here do not specify what to do in the case of overpayments by an employer.[3] The summary plan description does have a section on overpayments and erroneous payments, but that section addresses payments made *to* plan participants or their dependents that the Fund wants to recover; it does not contemplate overpayments being refunded to plan participants. *See* Ex. 4, at 64.[4] Moreover, although in certain circumstances *employers* can recover for mistakenly made contributions, *see UIU Severance Pay Tr. Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 512–13 (7th Cir. 1993) (citing 29 U.S.C. § 1103(c)(2)(A)(ii)), no authority supports such recovery is available to *employees*. It goes without saying that Wendelburg is not an "employer" under ERISA, and no other provision authorizes multiemployer funds to return mistakenly paid contributions.

Even if Wendelburg could show that an employee may seek recovery for mistakenly made benefit contributions by an employer, it appears beyond doubt that the alleged overpayments here were not the result of a mistake of fact or law. Wendelburg suggests that his employer should not have made contributions to the Fund beyond what was necessary to maintain his eligibility for benefits. However, the plain language of the relevant agreements establishes that Sid's was *required* to make contributions to the Fund for each hour that Wendelburg worked. The Local 113 Building Agreements in effect from 2021 to 2023 said that Sid's shall make monthly payments to the Fund "for each hour (whether straight-time or

---

[3] The CBAs do indicate that all hourly contributions paid by employers to the fund "shall be used for health and welfare benefits, administrative costs and as may otherwise be prescribed in the Trust Agreement governing such Fund." Ex. 1, at 20; Ex. 2, at 20; Ex. 3, at 10. The court can consider the agreements without converting the Fund's motion to a motion for summary judgment because Wendelburg explicitly referenced his "union contract" in the complaint, Compl. 2, and those agreements are central to his claim, *see Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 543 (7th Cir. 2022).

[4] Wendelburg attached to his complaint two pages of the Fund's summary plan description. *See* Compl. 5–6. Under the rule of completeness, the court may consider the entire document without converting the Fund's motion to a motion for summary judgment. *See Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1126 n.1 (7th Cir. 2022); *see also* Fed. R. Evid. 106.

overtime) for which wages or compensation is payable to an employee under [the] Agreement[s]." Ex. 1, at 20, 60; Ex. 2, at 20, 62. Likewise, the 62-County Building Agreement in effect at the time required Sid's to make monthly payments to the Fund "for each hour worked by all Employees . . . covered by [that] Agreement" for work performed outside the Milwaukee area. *See* Ex. 3, at 10, 37–42. The agreements did not cap contributions at the number of hours employees needed to maintain their eligibility for benefits from the Fund. "Contributions made in accordance with a collective bargaining agreement and trust agreement are not made in error" and, thus, cannot be refunded under ERISA. *Brigadier Roofing, Inc. v. Roofers' Unions Welfare Tr. Fund*, No. 14 CV 10496, 2017 WL 2834533, 2017 U.S. Dist. LEXIS 101849, at *17 (N.D. Ill. June 30, 2017) (citing *Whitworth Bros. Storage Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 794 F.2d 221, 236 n.25 (6th Cir. 1986); *Mazza v. Sheet Metal Workers' Nat'l Pension Fund*, 410 F. App'x 464, 469 (3d Cir. 2010)).

In addition to being inconsistent with the terms of his union contracts, Wendelburg's desire that his employer had limited its contributions to the minimum number of hours to maintain his eligibility for benefits likely would have had negative consequences for him and his fellow union members. The standard for maintaining eligibility was 345 hours of contributions for every three months—that is, about less than 30 hours a week. However, under the terms of the plan, any contribution hours above that minimum threshold could be used to make up for lean months. "Overpayments" therefore benefit employees by helping avoid disruptions of coverage based on variations in hours worked.

Wendelburg attaches to his complaint a document that he says is proof that "extra" hours are not banked or credited. *See* ECF No. 1-1 at 13. That self-pay notice, however, explicitly lists the hours that were credited on his behalf for the previous three-, six-, nine-,

6

and twelve-month period. Unfortunately for Wendelburg, it appears he did not bank enough extra hours to maintain his eligibility during that time.

Wendelburg also argues that the Fund does offer refunds to employees in certain circumstances. For example, if an employer fails to make contributions to the Fund as required by a CBA, the employee can maintain coverage by making self-payments. *See* Pl.'s Resp. 2–3. Once the employer catches up on its required contributions, the Fund cuts a check to the employee to refund the amount he paid out of pocket. Wendelburg insists that, because the Fund refunds self-pays, it should also return to him contributions made by his employer.

The Fund's policy to refund duplicated employee self-paid contributions back to the participant does not entitle Wendelburg to a "refund" for the overpayments he alleges here. ERISA does not impose any restrictions on a fund's right to refund contributions made by a participant. The Act does, however, restrict refunds of contributions made by employers. And, for the reasons discussed above, Wendelburg does not qualify for such a refund. Wendelburg cannot point to any provision—whether in the CBAs, the plan's terms, ERISA, or otherwise—that allows a multiemployer welfare fund to refund to an individual plan participant contributions made by an employer on the employee's behalf for health and welfare benefits.

In sum, Wendelburg's complaint does not state a claim to relief that is plausible on its face. The court therefore **GRANTS** the defendant's motion for judgment on the pleadings, ECF No. 8. Because any amendment would be futile, *see Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F. 4th 1014, 1017, 1023 (7th Cir. 2022), the court dismisses this action **WITH PREJUDICE**.

**SO ORDERED** this 10th day of April, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge